May it please the Court, Margie Myers, Federal Public Defender, representing Mr. Ramirez Noria. The issue in this case is whether or not the admission of the non-testifying agent's report of his interview of an inadmissible or deportable alien known as the I-213 violated Mr. Ramirez Noria's Sixth Amendment right to confrontation and also the rules of evidence, in particular the law enforcement exclusion. And we know the issue is whether or not the document is testimonial. In Crawford, of course, the Supreme Court emphasized that we looked at whether it's subjectively reasonable to believe that the statement would be available for a criminal trial. In Davis, the Supreme Court elaborated on that and emphasized that we look at whether the primary purpose of the interrogation, using interrogation loosely, it isn't a formal interrogation, is to establish or prove past events that are, quote, potentially relevant to later criminal prosecution. I've taken the liberty of distributing a visual aid in this court, in this case, which is Exhibit A, and it's highlighted as I'm going to make reference to it. This is one of the five I-213s that were admitted in the trial. And I think even looking at the document, the Court can see that this is in fact a document that the primary purpose is potentially relevant to a criminal trial. And I say that for a number of reasons. Number one, although it's redacted so that the jury wouldn't see it, it is an interview of an inadmissible or deportable alien. It's not an interview of everybody who comes into the United States. But even most significantly, the instructions to the agent filling it out in the narrative section are that the agent should set forth details, including the time, place, manner of entry, attempted entry or other entry, and the elements which establish administrative and or a criminal violation. In other words, this is a document prepared specifically to be used, either for an administrative or also a criminal prosecution. And in fact, where it says entry without inspection from Mexico, that is an admission of all of the elements of a misdemeanor offense, that the person is an alien and that the person has entered without inspection. And this is the document being used to prosecute tens of thousands of individuals every year in this country. This is not like a warrant of deportation, which we did not object to and which the court has repeatedly indicated both before and after Crawford, that that document both is not within the law enforcement exception and not subject to the Sixth Amendment. And I'm going to focus on the Sixth Amendment because the interests are similar. The Sixth Amendment trumps the rules of evidence, so even if it was admissible under the rules of evidence, the Sixth Amendment wins. But the bottom line is the issues are similar. And the difference is, and I think the court's analysis in Quesada, which was a pre-Crawford case dealing with the warrants of deportation, demonstrate why those documents are different than the I-213. The warrant of deportation is prepared by the agent watching the alien be deported. It is an eyes-on observation. It is prepared contemporaneously. It is, in this court's word, an objective observation of a mechanical fact. All the agent is doing is saying, I have seen that person cross the river or get on the plane. That is completely different from an I-213, which is a report of an agent's interview of someone else. Now, what's interesting is normally the I-213 issue has come up in the Eleventh and the Ninth Circuit, where it's an interview of other people who are allegedly transported or smuggled by the defendant. So the issue is whether or not that I-213 can be admitted to prove that the people smuggled are aliens. And as I've said in my briefs, the only court to say yes is the Eleventh Circuit. The Ninth Circuit said it is not a violation of confrontation, but they said it's not. It's subject to hearsay rules. Because it is not the agent observing mechanically and objectively what happens. It is the agent writing a report of an interview of what someone else said. So it is clearly not the same as the warrant of deportation or the other documents which involve contemporaneous objective information. The warrant of deportation also is clearly different under the Davis test. Davis actually involved two cases, and the Supreme Court emphasized that where the person is making statements about an ongoing emergency, and it's contemporaneous, and that was Davis, it's not testimonial. But the court also recognized that something that might not be testimonial can evolve into testimonial if we then transition to talking about other facts that might be issues to prove in a case. And that's what happened in Hemet. Let me ask you before we get too far into your Sixth Amendment argument. Yes. There are five of these documents, the ones, as I understand it, there are five that are at issue in this case. And the four prior ones are relative to four prior instances of deportation. Is that correct? Yes. And what would the... I just want to make sure I'm clear on the circumstances of the previous four forms. The last one is pertinent to this instance where he's prosecuted. Is that correct? That's correct, Your Honor. Okay. So there's four others, and then presumably, based on those four others, there are deportations... Well, one is a deportation, and then the next three are illegal reentries? They're all deportations. One of them also resulted in a misdemeanor prosecution for entry without inspection. Okay. All right. And as part of those prosecutions, a finding of fact would be made that his birthplace is, in this case, I believe, in Mexico. Mexico. Yes, Your Honor. Okay. So that's a fact that has been established four times previously. Is that correct? If I may address that. Sure. The deportation order and the four reinstituted orders were admitted into evidence. And the court instructed the jury correctly that that finding of fact is insufficient in a criminal case to establish that he was from Mexico. And it relied on a Ninth Circuit case because that would mean that different standards of proof. So it is true that there has been a finding of fact, but those deportation orders are insufficient in and of themselves to establish beyond a reasonable doubt in a criminal prosecution that the defendant was from Mexico. Okay. All right. And so, and in fact, the jury was instructed to that effect. Okay. Instructed. You have no beef then with the jury instruction? No. No, the judge pretty much gave the jury instruction we asked for on that issue. In fact, the case was really tried on the, was tried because we were raising the Pereira issue, which is no longer an issue. So a lot of the litigation had to do with the Pereira issue. So the evidence of whether he's from Mexico is his statement or his alleged statement to the agent. And another concern, and we talked about in the case, Arellano Banuelos, which of course dealt with the Fifth Amendment issue and the Miranda issue, but as I've indicated, they are similar because the issue in that, this, the government in this case kept saying it's mere booking information. And it really isn't, even if you look at the booking information cases. The booking information is extremely narrow. It literally is a name, age, date of birth. It would not include as relevant in this case, place of birth. The Supreme Court case Munez versus Pennsylvania said when he, when they asked what is the date of your sixth birthday, that was not booking information. And in this case, in Virgen Moreno, which is this circuit's case, when they asked where have you lived before, that was not booking information because it was designed to elicit incriminating information in that case. Just as in this case and is in Arellano Banuelos, this court recognized that when an immigration agent is interviewing an alien who he already knows is here unlawfully, he certainly knows that his questions about where is he coming from and how did he enter, that those questions are designed to elicit incriminating information. I also mention those cases because what's bizarre is that if the I-213 is admissible, particularly without the agent, this court has lines of cases, not only Arellano Banuelos, which has to do with the circumstances of the interrogation of the defendant, but cases involving the statements of the aliens where the government has sought to introduce the depositions of those aliens, Sixth Amendment clearly applies, no dispute that it's prepared for litigation, but more importantly that there's a right to confrontation. If the I-213 is admissible, whether it's an interview of the defendant or the witness, then there's not even a need for depositions. There is not even a need for Arellano Banuelos questioning because apparently what the government did in this case is said, here's the report of what the agent interviewed. There's no analysis of the circumstances. There's no analysis of whether Miranda applied, and obviously in Arellano ultimately the court held it did not. There's no analysis from the agent about what the circumstances are of the interview. And this again, it comes down to, is it objective? Is it contemporaneous? Or is it recording what someone else said? And in the context of the interview, whether it's of an alien or even more significantly of the defendant, it is critical to look into what did the defendant really say? Did he say he was from Mexico? Could the agent communicate accurately with the defendant? Could the, did the agent accurately recite what was in here? You only have the first page of this document, which is really a four-page document, and again, that's because at trial we kept out things like criminal history and prior deportations. But those factors in the document further demonstrate this is not a booking form. This is a form prepared by an agent who essentially has a dual-purpose role as an immigration deportation officer or as a person who is referring individuals for criminal prosecution. And what he is doing, he takes notes and he prepares this report after the fact, which was an issue in Davis or in Hammond, the other case, and he writes down what he recalls of what, in this case, the defendant said, or in other cases, what witnesses said about where they were from and the circumstances of their apprehension. So, and I note that the 11th Circuit case, I think it's Caraballo, which is the only case that specifically is on point, and we submit that it is simply wrong. First of all, it relies on cases that are no longer good law or inapplicable. It applies on this, it relies on this case, Renteria-Gonzalez, as the government relies on many of these cases in its brief, which is an immigration case. The Sixth Amendment doesn't apply, the rules of evidence don't apply, and in fact that case was decided before Crawford and has all of the reliability language that may be relevant to due process in an immigration case, but is no longer a factor in the Sixth Amendment analysis, which is what we are talking about here. And the 11th Circuit simply says it's an immigration document and therefore it's not subject to the Sixth Amendment or the law enforcement exception. And it cites Roeda, which is a pre-Crawford case and which was overruled by this court in Martinez-Rios, recognized that in fact there are immigration documents that cannot be presented in a criminal trial. And I would refer the court to the most significant case from this court, which is Doron-Caldera, which sets forth it's not enough that it's an immigration document, it is the government's burden to establish the circumstances of the preparation of that document, which the government did not do at all in this case, and it is the government's burden to establish that it is not a testimonial document. And again, what is unusual in this case, as opposed to most immigration prosecutions, is the agent didn't even testify. We're not here deciding whether or not the agent could say, I prepared this report and then the report is admissible. I would undoubtedly argue it's not, but at least we would have had the agent to say the circumstances of the preparation of the report. Has any court accepted your argument? No, Your Honor. But only one court specifically has rejected it, which is the Eleventh Circuit, and which did not address this issue. The Eleventh Circuit? The Eleventh Circuit. The Eleventh. The Ninth Circuit said it's hearsay. The Ninth Circuit said, the Ninth Circuit disagreed that it was confrontation. They didn't really analyze the document, but what they said is not essential to the holding because the Ninth Circuit said it doesn't, it's not the agent's report. It is not a government record because it's not what the agent saw, Your Honor. Well, the Eleventh Circuit did, I mean, they dealt with the hearsay first, but they do directly speak to Crawford and Davis v. Washington also in dealing specifically with the confrontation issue. Absolutely. I thought you said that, maybe I misheard, I thought you said they didn't address the Sixth Amendment. No, the Ninth Circuit decided on non-Sixth Amendment grounds that the documents were not admissible. The Eleventh, I am arguing that the Eleventh Circuit is wrong, Your Honor. Gotcha. Okay. Thank you. Okay, well, you've reserved your rebuttal time. All right, let's hear from the government. May it please the Court, Katherine Pick on behalf of the United States. The District Court properly determined that the first pages of the I-213's reports were admissible under the public record exception. Because the first pages only contained unambiguous factual information and was recorded for the purpose to document an encounter with the defendant, the evidence is non-testimonial and there is no Sixth Amendment confrontation clause violation. This Court should affirm the District Court's judgment because there is no error. This Court has previously held that I-213's are admissible under the public record exception. This Court in Gonzales-Reyes v. Holder explained that I-213's are essentially a recorded recollection of a conversation with an alien and it is generally admissible. Christine Poole, the INS custodian of record, testified that I-213's are reports of biographical information that is usually resulting from an encounter with an individual. The Eleventh Circuit has also held that I-213's are admissible under the public record exception. The biographical information on the first page is non-testimonial and therefore the confrontation clause does not bar the admission as evidence. In Crawford, the Supreme Court stated that statements are testimonial when the circumstances objectively indicate that the primary purpose of the statement is to establish or prove past events potentially relevant to later criminal prosecution. Here, the I-213's are generated by immigration agents for the primary purpose to track the entry of aliens in the United States. Again, Christine... If you could maybe dig a little deeper on that. What is the procedure that triggers the use of the document? How often is it used? With what frequency? And in other words, it becomes a business record based on your argument. It is a business record of the government. How often are there, I know your opponent mentioned that these were not the ordinary course of business where everyone was, they used this form to interview everyone, so if you could maybe walk us through, just take a second and walk us through how the I-213 is first implicated, how it is filled out under what circumstances, and then how it is, how does it ultimately get to become a business record by way of storage? Of course, Your Honor, I'm happy to explain. So, the I-213's are part of the immigration, ICE's records. Every time they come across an inadmissible, a deported alien, either whether it's in jail or whether it's in the brush, they fill out this I-213 report and it documents their country of origin, the nationality of their parents, where they were found, their date of birth, height, weight. At that time, they're trying to determine if it's someone who's here illegally. Is that correct? Yes. It's filled out every time a foreign entrant comes into the United States. And when I mean foreign, in the record, the title of the I-213 is inadmissible slash deported alien. So, they fill these reports out and it becomes part of the A file, the alien file, which is known as the A file. So, is there a determination made prior to that before we take out our I-213? Is there a determination made before that that a person is inadmissible or here illegally? In other words, how do you get to the point? And I think this kind of goes to the issue that's being raised for trial, the proof of the birthplace that the person's born in a foreign country and then we get to the issue of by what right is the person physically on this side of the border? So, who makes the determination to use the 213? Is it just used as a matter of course when someone is apprehended and cannot, doesn't have any ID or is it, that's where I'm a little lost right now. Yes. It's used as a matter of course. And so, they come across a foreign, a deportable alien and they say, do you have your papers? Okay, but we don't know if they're deportable yet though, right? Well, they're determining whether they are. And they, and the alien will say, no, I'm, I'm a Mexican citizen and if they're, so they make that first I213 report. It becomes a part of the record. Every other time that they come across this person again, they fill out the same exact report and it's filled out regardless of whether it's later on use at a criminal prosecution, the primary purpose is to track the inadmissible deportable aliens. So, their determination of whether someone is a deportable alien is found by the questions that they ask them. So, if ICE sweeps into a restaurant in Dallas and the five people run up from the kitchen and they apprehend them and then they ask them for papers, they don't have them, they fill out the 213, you're, you're, you're describing situations where the person comes across the water, presents themselves, and they're asked for papers and so forth. I'm, I have the same concerns that my colleague does as to how exactly this is used. If you make an arrest out in the street, et cetera, if frequently ICE does, seizes them, they suspect strongly they are illegals. Do they fill out this form then? I, I guess we're talking about, um, in your situation where if it's a, they, ICE walks into the restaurant and sees people. I think what they do is, Your Honor, they co- It's not an uncommon occurrence. No, and it's not. In, in this instance, this defendant was found in jail and so if they have, if they ask him, you know, they ask him what's your name, what's your country of origin, and if they say it is Mexico, they'll go and they'll see if the defendant has an alien file. And if they do, they'll fill out a 213. But for the first time, they ask those questions. And more often than not, if the ICE agent- What's the government's purpose in doing it? Well, the immigration, the purpose for the, um, for ICE is to track every, the inadmissible deportable aliens. It's used as a tracking method. It's like- That individual? Of that individual. It's like, yes, this individual, for example, Mr. Ramirez Noria, they have five 213s. We found him four times in jail and once in the brush. So they, the first one they track, they fill it out, and then every other encounter- What they're doing it is so that if, if they're apprehended again, you'll have proof that they've been there, they've done it before. Yes. And it's used as a tracking method. What's the prosecutorial purpose of it? Well, there is, it has nothing to do with the prosecutorial- It's made, it's made with anticipation it's going to be used in the, in the, um, if, if he comes back in and he's indicted. I, Your Honor, it's not, there's not that anticipation. The primary- What other purpose is it used for? It's used to track, it's the ICE's method to track inadmissible- Are you talking about just to keep up with the data, the flow of, of aliens, or are you- Yes, Your Honor, it is. It's used to keep up with the flow, to track, to see who's in here, who's not. The primary purpose of Border Agents' purpose is to, um, keep deportable inadmissible aliens out of the country. So they use this method of tracking people. Okay, well, we see that in their A-file. Individual. You- Yes, individual. You're giving numbers of, of a flow of illegals coming in from, from Mexico as distinguishments of other place, et cetera. I mean, in other words, I can see a lot of purposes of recording data to understand dimensions of the problem, which really don't necessarily relate to the specific identity of that individual that's here. But when you, when you move to, to creating a document, which is to be used if, if this individual shows up again, um, then why isn't that a, it's, the purpose of it is, is, is used for prosecution, I guess. What other, is there no other reason to use it? Um, I disagree, Your Honor. It, the purpose, the primary purpose is to track an every, an encounter with an individual. It is completed regardless of criminal prosecution. More often than not, in this case, there's five of them. This is the first illegal reentry offense. He had a misdemeanor before. So it's completed regardless. It has nothing to do, they're not thinking when they're completing this out. He wasn't indicted, that's what you're saying, and that's what, they keep the, the, the four other documents part of this before he was indicted, I mean, he wasn't caught criminally, but for illegal reentry, I think, or whatever. Um, I apologize, Your Honor, I didn't hear, um, your question. Yeah, I think I understand. Okay. Let me go back to one other thing you said. I'm still, I still want to be clear on when the border agent or officer takes out the I-213 and begins to fill it out. Uh, in Judge Higginbotham's example, let's say, of a workplace where, uh, a border agent comes in and, and wants to inspect or check in terms of the employees there, uh, let's say five of them, uh, are detained, uh, and I think you said that he asks place of birth first. Well, I, I don't know if it's, I don't know the answer if the question is if he asks it first. Well, but he asks it before the 213 is involved. Yeah. He would ask, let's say these five people, among other things, name, uh, that type of thing, place of birth, and if a person among those five says, I was born, uh, in such and such town in Mexico, then the agent says, okay, well, I'm going to have to fill out an I-213 on this, is, is that the process, or does he go to the five and say, I've got five I-213s and I'm going to fill them out, whether you're born in Pakistan, or Laredo, or some place in Mexico? It's, he asks, he fills them out, if they say yes, I'm not a United States citizen. Okay. He says, okay, then I'll bring out my inadmissible form, the I-213, and he fills it out, and that starts an alien file. And they're filled out, and they're filled, like I said, regardless of criminal prosecution. This, in this case, the defendant had five of them. Are they filled out if he says, I was born in Mexico, but I have, um, an ID, or a green card, or some other type of, uh, justification for being in the country, does that also get stored in the computer as a business record? I'm not entirely sure if they do, if that, if they do have a, you know, a green card if they're, I'm not sure, I don't know if they go check the database, and I'm not, I don't know the answer to that. Okay. I guess the point of my, almost all of the questions I've asked you is to get into the definition of a business record, because the form itself looks like a business record. It's a pre-printed form. It's got a number, as most things with the government have. It's got an official number, uh, and it's got a lot of blanks and a signature line for somebody who has authority. And then it gets stored somewhere, which is another indicia, but, uh, indicia of, of a, uh, a business record. But there are other factors that come into play, and I'm, I'm just inquiring, because I want to test your argument, if you want to elaborate on it, fine. If not, I want to test your argument as to how this meets that definition, the general definition of a business record. Sure, Your Honor. Um, yes. It is, it's a routine. It's done for their administrative purposes. You know, Department of Homeland Security, I, their purpose is to, um, prevent inadmissible aliens from coming into our country. And so, the way to track everyone who comes into our country is they use these forms, and it's just part of their routine administrative purpose. They come, they fill out the form, and they put it in the alien file. So, um, like I said, it's part of, it's one form out of many. This alien, um, this specific form is part of the alien file, which has order of removals, deportation orders. Um, it's just, it's just, um, filling out unambiguous, unambiguous factual information. And um, therefore, that's why it's a business record exception. Um, this court, and the cases, uh, written here at Gonzales, and the immigration contacts have determined that it's a, it's admissible under the public record exception. Um, and. Is there a regulation, or, because it is a government form, of which there are probably jillions of them in all the departments, et cetera, is there a promulgation document, a code of federal regulation, or a source document that triggers the creation of the I-213? In other words, that says in the promulgation what you have said in terms of this document shall be created, ya, ya, ya, ya, ya. That speaks to the promulgation of the very document, its purpose, dot, dot, dot, you know, 1048. Do you understand what I'm saying? Yes, Your Honor. And I know that there is, I, I have come across it. I don't have the exact number before me. I am happy to supplement, um, a letter and let you, and point the court to, um, where these policies and where the, uh, promulgation hat is laid out for filling out these forms. Well, I ask because, I mean, in looking at the 11th Circuit case, I mean, I guess presumably    similar questions were asked, but it's not clear, in other words, what the source of knowledge of the agent is, that that's the purpose for which the form is to be used, uh, in the manner that you're saying, or whether, you know, it's being used for some purpose other than for which it was originated. Do you follow me? Yes, Your Honor. And the custodian of, of record who testified at trial stated that these forms are kept in the regular course of business, that they're used when they're, um, they're filled out when there's an encounter of a, with a foreign individual, and, um, they're part of the A file, which is made whenever time they encounter a foreign individual, these alien files, they're there. Um, so she testified that they're kept in the regular course of business. They're part of the alien file. Um, I, I don't believe she, um, testified to what code, um, but like I said, I'd be happy to supplement the exact... Well, that's just more of a, it doesn't make or break, you know, the case, but I'm just curious, since this keeps coming up, because we have a lot of cases, unpublished cases and others in which the 213 has come up, uh, you know, as a business record, but shift gears, because obviously the primary thrust is the Sixth Amendment confrontation issue, um, that counsel opposite acknowledges the Eleventh Circuit case, but says it's incorrect and we shouldn't follow it. So address the confrontation issues. Yes, Your Honor. Um, well, this, as we know, the primary, the Supreme Court has laid out the primary purpose test of whether determining something is testimonial. And here, the primary purpose of generating these 213s is not for criminal prosecution. It's not used for an out-of-court statement to, to prove. Um, they're just part of the primary purpose is... My argument is that these are dissimilar from the use of, of detainer warrants, uh, that have been generated in the past. Um, they, um, even though they may be, they may be used in some later prosecution, but I take it that, that you, uh, warrant a deportation order earlier would, would still meet the business records exception. At least that would, that would be a suggestion that would come to mind, that there are other records that are generated that are later used, uh, as business records in the prosecution. Um, and that, that, that, that a, that they can be, can be later used in a prosecution in and of itself does not mean that, that they, that they become an inadmissible record, I would think. Um, Your Honor, I, I apologize. I don't understand your question. Could you rephrase it? I don't remember I asked about it. I, I apologize. Um, but if I'm understanding and, uh, the point of that you're trying to... It was what we call a friendly question, but you, you missed it. I, yes. But you, but you missed the friendly question. I, I, I apologize. Um, Your Honor, I, I couldn't really hear and I guess I missed that softball one. Um, but yes, there are other cases that hold that the warrant of removal and deportation are not, are non-testimonial. In United States v. Garcia, this court held that warrants of removals are non-testimonial. And they're all part of, like I said, the A file, the primary purpose. Well, I don't think that's where your argument ought to be. I'm not telling you how to argue your case, but there are a whole lot of records that are generated in the course of this thing. And, and, and it may well be important to a later prosecution, but the overwhelming percentage of these cases do not end in criminal prosecutions. Now that's, that's. Yes. I take it that's the government's argument. Yes, Your Honor. And, and that is our argument. And, um, thank you for, for, for hitting on our, on our argument. And. That's what you call a beach ball. Yes. Um, yes. And so here, these are, they're, they don't meet the standard of what testimonial, um, documents are. That they're just part of, just similar to the warrants of removal and other documents. Um, in the A file. And because in the Eleventh Circuit laid out why they're non-testimonial, I think that's a very instructive case, um, for this court to look at. We cited in our brief and, um, for the same reasons. And even, um, if this court were to find that there was error, there's still, uh, we can also prove alienage in the following documents. We had the warrant of removal. We had their certificate of non-existence of record, which the custodian of record testified to. The order of immigration, um, from the immigration judge. As well as the I, um, 871, the reinstatement of the judge's original order of removal. Ms. Meyers indicated to us that in this jury trial specifically, there was a jury charge that was tailored specifically to embrace the concerns here. So, was that an acknowledgment by the government that there was potentially a problem with the routine way this was done, that the jury, in fact, needed to make this finding? Um, Your Honor, I see I'm out of time. May I briefly answer your question? The red light never saves you from answering. Never, never, never. Um, Your Honor, no, that was an acknowledgment. We thought, we believe that the district court properly admitted these records and that, um, the jury instruction, that was in a concession on the government's part, Your Honor. So, I take it we don't have a pattern charge that deals with this issue? No, Your Honor, this is kind of, this is coming up due to the amount of illegal reentry cases in immigration. As this court knows, it's a heavy docket. Okay. Thank you. Thank you. Back to you, Ms. Meyers. First of all, I want to clarify, this is not a business record, and the courts have held it's not a business record. I think it's in Jerome. If not, it's in the Ninth Circuit case. It has, if it, if it's under the rules of evidence, it's under the government record. It is prepared for litigation, whether or not it's administrative or immigration or whether or not it's criminal. Um, secondly, when Judge Englehart, you are asking how this is prepared, that is exactly the problem in this case. Even in Caraballo, the agent who prepared the documents testified about the way he prepared them and what he did and how he prepared them. There is nothing in this record to explain how they're prepared. Now, I, like the government, can talk to you about how they've prepared, how they're prepared, because I've represented thousands of these people. The agent takes notes. The agent prepares this report. The report is a four-page report that is not just, oh, you're from Mexico. It includes criminal history, prior deportation, whether they're in a gang. It contains all kinds of information. And if there is one piece of this report that should demonstrate that it certainly can be testimonial, and my argument is it certainly depends, if the government is to win in this case, the court must hold the I-213 automatically, like a warrant of deportation, is not testimonial. And I don't see how the court can hold this. As I say, even in Caraballo, we had an agent testifying. And this document, in Melendez-Diaz, the Supreme Court said, look at the document, look at the affidavit. The argument was, this is a neutral chemist just doing chemistry. Who needs anybody? And the Supreme Court said, look at the document, and the document said it's for criminal prosecution. And this document says, find out the elements for administrative or criminal prosecution, and it directs the agent to specifically ask for the elements that can be used in criminal prosecution. It is whether it's potentially relevant. To address Judge Higginbotham's concern, of course, many documents are prepared that could be used in a criminal trial. But the warrant of deportation is different for two reasons. First of all, the primary purpose is making sure the alien leaves. That's the purpose. Does it matter in a criminal trial? Yes. But that's what the agent's looking at. And the agent is not making any judgment call whatsoever. He or she is watching the alien leave the United States. This is not unambiguous information. But it also proves he's been deported once before. Essentially, it proves the fact that he has been, I don't know, warned before, carries a lot of consequences in a subsequent criminal prosecution. Absolutely, but the primary purpose is different, where here the person interviewing the alien is looking at the possibility of a criminal prosecution. That's not the issue for the agent. Certainly he's like, when this guy comes back, he could be interviewed. And the question asked of the defendant is not an unambiguous question like whether you crossed the river. Would it be fair to boil your argument down to say that any time the government wishes to use an I-213 in a criminal prosecution, the person whose signature who actually filled it out and signed it must testify, unless, of course, it's waived by stipulation. Is that a fair statement, that that satisfies Crawford, in your opinion? I would say at a minimum. I probably would be here arguing the I-213 shouldn't come in, but I certainly, my argument is that to let the I- I mean, as the court recognized in Arellano-Banuelos, these interviews are dual purpose, and they relied on the Supreme Court case and tax cases. Most tax cases don't result in criminal prosecution, but any time an IRS agent is talking to somebody, there could be criminal liability. The coroner's report is not necessarily prepared for a homicide case, but the coroner's report cannot come in in a criminal case without the coroner testifying. So that is exactly it, Judge Englehart. In this case, we don't even know how the documents were prepared. We don't know what the agent was thinking. We don't know if the defendant was in custody for Miranda purposes. We don't know if he was caught on the border or in the restaurant. We don't know anything about the preparation. All we have is what the agent wrote down, and that is critical. The Supreme Court referred to a concern about officers of the government preparing reports no less than four times, and it wasn't just police officers. Thank you, Your Honor. Okay. Thank you. Thank you to both sides for excellent briefing and argument in the case. We'll take it under submission along with the other cases. All right, we'll call the next.